## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL JAY MOLZEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 05-2360-HHK |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF BELINDA AUTERSON

I, Belinda Auterson, do hereby declare and state the following:

1.      I am employed as a Case Manager by the Federal Bureau of Prisons at the Federal

Correctional Complex (FCC) at Terre Haute, Indiana.  I have held this position since November

19, 2000.  I am currently assigned as one of the Case Managers on Unit 3 at the Federal

Correctional Institution at the FCC.

2.      The Plaintiff, Michael Jay Molzen, Register No. 09229-041, who is assigned to

Unit 3 is on my caseload.  As part of the inmate's unit team and as his Case Manager, one of my

responsibilities include preparing an inmate's custody classification scoring.

3.      I am aware of inmate Molzen's allegation that his custody classification scoring is

incorrect because it relies on inaccurate information contained in his Presentence Investigation

Report. The Presentence Investigation Report (PSR) was prepared by the United States Probation

Office in the District of Minnesota in Docket No. 0:00CR00025-002 (JMR).

4.      Inmate Molzen asserts that his PSR contained inaccurate information based upon

his belief the court overruled the finding that his arrest conduct was "obstruction of justice"

instead of "reckless endangerment." Based upon inmate Molzen's contention, I contacted the

Probation Officer who prepared the report to seek clarification and resolve the issue raised by

inmate Molzen.

   5.    Federal Bureau of Prisons Program Statement 5800.11, Inmate Central File,

Privacy Folder, and Parole Mini-File, provides guidance to address an inmate's challenge to

information contained in his Central File. Specifically, Section 15 (C) addresses challenges to

information in the Presentence Investigation Report and the action staff are to take to resolve the

challenge.   Staff are to request a written response from the appropriate U.S. Probation Office

that addresses the inmate's challenge. See Attachment 1, attached hereto.

   6.    A letter dated March 1, 2006, from Ms. Lisa A. Connolly, U.S. Probation

Officer, U.S. District Court, District of Minnesota, was received via facsimile at the institution.

This letter provided clarification that the PSR was accurate.   See Attachment 2, attached hereto.

   7.    Correspondence dated January 2, 2004, was sent from inmate Molzen's Unit

Manager, Steve Robinson, at the Federal Correctional Institution, Oxford, Wisconsin, to the

Chief United States Probation Office in the District of Minnesota. The correspondence

references Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C.Cir. 1992). See Attachment 3,

attached hereto.

   8.    A review of inmate Molzen's central file reveals that he has raised this issue at an

institution where he was previously housed. Some of this correspondence includes Inmate

Molzen's submission of an Inmate Request to Staff dated October 22, 2003, and October 23,

2003, to his Case Manager at FCI Oxford, in which he requested reconsideration of his custody

point based upon his Presentence Report.   See Attachment 4, attached hereto.

9.       Inmate Molzen submitted an Inmate Request to Staff, dated November 15, 2003, to the Case Management Coordinator at FCI Oxford concerning his custody level scoring based on his arrest conduct.  See Attachment 5, attached hereto.

10.      Based upon Bureau of Prisons' Security and Designation Program Statement, inmate Molzen's offense behavior in which he struck two law enforcement vehicles with his vehicle in an attempt to flee arrest, is considered an assault under the "greatest severity" category for Custody Classification scoring.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 30th day of May 2006.

_____
Belinda Auterson
Case Manager (Unit 3)
FCI Terre Haute

# ATTACHMENT 1

MOLZEN V. FEDERAL BUREAU OF PRISONS
Cause No. 1:05-cv-2360-HHK
United States District Court
for the District of Columbia



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD
**NUMBER:** 5800.11
**DATE:** September 8, 1997
**SUBJECT:** Inmate Central File, Privacy
Folder, and Parole Mini-Files

1.  PURPOSE AND SCOPE.  The Bureau of Prisons maintains complete
information on all inmates confined in Bureau institutions.
Staff use the Inmate Central File, Privacy Folder, and Parole
Mini-file to maintain pertinent information regarding a detainee,
unsentenced and sentenced offenders.

The Bureau of Prisons has had numerous policy sources on all
facets of the Inmate Central File System.  This Program Statement
consolidates many of these sources for easier reference.  This
issuance sets forth guidelines in the following areas:

  a.  Inmate Record Functions,
  b.  Inmate Central Files,
  c.  Standardization of Inmate Central File Material,
  d.  Maintenance, Security, and Access Responsibilities and
      Procedures,
  e.  Routine Uses of Inmate Central File,
  f.  Disclosure of Inmate Central File Materials,
  g.  Inmate Review of Inmate Central File,
  h.  Documentation of Oral Disclosure,
  i.  Transfer of Records Between Bureau Facilities,
  j.  Requests for Forwarding of Inmate Files,
  k.  Retirement of Inmate Central File, and
  l.  Parole Mini-files.
  m.  Pretrial Inmate File Material/Immigration & Naturalization
      Service (INS) Detainees

2.  PROGRAM OBJECTIVES.  The expected results of this program
are:

  a.  Inmate files will be maintained with complete information
on each inmate confined in a Bureau of Prisons institution.

  b.  U.S. Parole Mini-Files will be completed and accessible to
the U.S. Parole Commission for all inmates specified in this
Program Statement.

PS 5800.11
September 8, 1997
Page 19

(1)   initial review of all current files of the inmate
      population;
(2)   receipt of inmate requests to review files, and the
      monitoring of the inmate review of files; and
(3)   screening of all records and documents in the future as
      they are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for
submitting and acknowledging requests and for logging and
scheduling Inmate Central File reviews.

b.  <u>Inmate Request and Review</u>.  Any inmate seeking to look at
his/her Inmate Central File shall submit a request to a staff
member, as designated in the local instruction.

- The inmate's request should be acknowledged.
- The inmate should be permitted to review the file whenever
  practicable.
- All file reviews must be done under constant and direct
  staff supervision.
- Those materials which have been determined to be non-
  disclosable shall be removed from the folder before inmate
  review.
- An entry shall be made on the Inmate Activity Record
  (BP-381) to show the date the inmate reviews the file.
  The staff member monitoring the review shall initial the
  entry and the inmate shall be asked to initial it.

c.  <u>Inmate Challenge to Information</u>.  An inmate may challenge
the accuracy of the information in his or her Inmate Central
File.  Unit team staff shall take reasonable steps to
ensure the accuracy of challenged information, particularly when
that information is capable of being verified.  The inmate is
required to provide staff with sufficient information in support
of a challenge (names of persons to contact, government agency,
etc...).

When an inmate provides such information, staff shall review
the alleged error(s) and take reasonable steps to ensure the
information is correct.

For example, if an inmate challenges information in the
Presentence Investigation Report (PSI), staff should inform the
appropriate U.S. Probation Office (USPO) in writing of the
disputed information, and request that a written response also be
provided.  **USPO procedures, however, do not allow for changes or
addendums to be made to the Presentence Investigation Report
after sentencing since it is a court document**.

If the USPO subsequently reports that the challenged
information, or some part thereof is not accurate, staff shall
attach the Bureau's inquiry and the USPO response to the
challenged document.  Staff shall file this information in the

applicable section of the Inmate Central file, and also make a notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

When the USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff should subsequently review, and where indicated, correct Bureau generated reports or data such as the Inmate Load and Security Designation form (BP-337), the Custody Classification form (BP-338), Progress Report, and any other reports that may have been based on the PSI. Bureau reports, data, or SENTRY transactions should be corrected within a reasonable period of time after identification as being inaccurate.

If the information source will provide a corrected document or data, it should be immediately inserted in the file or data base and the inaccurate information or document removed. A notation on the Inmate Activity Record form should acknowledge the insertion of the corrected information or document.

d. <u>Inmate Copies</u>. Any inmate who wishes to receive copies of disclosable materials from the file shall submit a request to institution staff. Within a reasonable time after the request, institution staff shall provide the inmate copies of requested disclosable documents maintained in the Inmate Central File. Fees for the copies are to be calculated in accordance with the Program Statement on Release of Information.

e. <u>Privacy Folder</u>. Records which have been determined, under separately issued guidelines, to be excluded from inmate review shall be placed in the Privacy Folder. Normally, actual placement of documents in the Inmate Central File is the Unit Secretary's responsibility. The Privacy Folder shall be placed on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in the Inmate Central File, they are routed to an appropriate staff member the Warden designated. The Case Manager shall review the materials, to ascertain whether to place them in the regular sections, the Privacy Folder, or discard them. Any document to be excluded from inmate review must be stamped "FOI EXEMPT". At each Program Review and before an inmate reviews his/her Inmate Central File, the Case Manager shall review the file to ensure the proper location of forms and purge outdated or unnecessary forms and/or documentation.

f. <u>Parole Files</u>. Parole Mini-files, examiner packets, and pre-hearing assessments are not disclosable unless specifically authorized by the U.S. Parole Commission. The Parole Mini-file and other hearing materials must be removed from the Inmate Central File prior to inmate review. The inmate may seek review

# ATTACHMENT 2

MOLZEN V. FEDERAL BUREAU OF PRISONS
Cause No. 1:05-cv-2360-HHK
United States District Court
for the District of Columbia

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### PROBATION OFFICE

KEVIN D. LOWRY
Chief Probation Officer
300 S 4th St., Ste. 406
Minneapolis MN 55415-1320
612-664-5400
FAX 612-664-5350

316 N Robert St., Ste. 600
St. Paul MN 55101-1465
651-848-1250
FAX 651-848-1255

P.O. Box 1159
Bemidji MN 56619
888-766-2110
FAX 218-333-0102

515 W 1st St., Ste. 206
Duluth MN 55802-1302
218-529-3350
FAX 218-529-3546

118 S Mill St., Ste. 304
Fergus Falls MN 56537-2576
218-739-0041 or
612-664-5410
FAX 218-739-0043

Reply to:  Minneapolis

March 1, 2006

Mr. Michael Jay Molzen
Reg. No. 09229-041
P.O. Box 33
Terre Haute, Indiana 47808

Dear Michael Jay Molzen:

I am writing in response to correspondence received in this office regarding your presentence investigation report. As you know, the presentence investigation report included an enhancement for reckless endangerment during flight. During the sentencing hearing, the Court chose to apply an enhancement for obstruction of justice and did not apply an enhancement for reckless endangerment. However, the Court did not indicate that the information contained regarding the conduct in the presentence investigation report which led to the enhancement was not factual. The Court simply chose, as indicated in the transcript, to apply the Guidelines in your benefit. The Court did not order the presentence investigation report to be amended for false information. The Court chose to use the facts contained in the Offense Conduct section of the presentence investigation report to apply an enhancement for Obstruction of Justice and not the enhancement for Reckless Endangerment During Flight.

Sincerely,

Kevin D. Lowry
Chief U.S. Probation Officer

Lisa A. Connolly
U.S. Probation Officer
Officer's Telephone: 612-664-5355

LAC:ejw

OPTIONAL FORM 99 (7-90)

## FAX TRANSMITTAL   # of pages ▶ / 

| To Belinda Offerson | From Lisa Connolly |
| Dept./Agency BOP | Phone # 612 664-5355 |
| Fax # (812) 238-3330 | Fax # 612 664-5350 |

NSN 7540-01-317-7368   5099-101   GENERAL SERVICES ADMINISTRATION

# ATTACHMENT 3

MOLZEN V. FEDERAL BUREAU OF PRISONS
Cause No. 1:05-cv-2360-HHK
United States District Court
for the District of Columbia



**U.S. Depart    at of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*

---

January 2, 2004

*P.O. Box 0500*
*Oxford, Wisconsin 53952*

Kevin D. Lowry, Chief USPO
District of Minnesota
300 South Fourth Street
Suite 406
Minneapolis, MN 55415

RE:  MOLZEN, Michael
     Reg. No.09229-041

Dear Mr. Lowry,

This correspondence is in regards to inmate Michael Molzen, a
federal prisoner who is presently incarcerated at the Federal
Correctional Institution in Oxford, Wisconsin.

In accordance with Bureau of Prisons' Operation Memorandum, 068-93
(5820), <u>Maintenance of Inmate Files</u>, inmate Molzen has presented
the enclosed documents regarding information he maintains is
incorrectly   reported   in   his   Pre-Sentence   Investigation.
Accordingly, we request that you review the enclosed documents and
return to us your assessment of the allegations made by inmate
Molzen pertaining to his Pre-Sentence Investigation.

In compliance with <u>Sellers vs. Bureau of Prisons</u>, 959F.2d307(d.c.
cir. 1992), your decision regarding inmate Molzen's   allegations
will be incorporated into his central file with his Pre-Sentence
Investigation.

Should you have any questions pertaining to this matter, please do
not hesitate to contact me.  Thank you for your assistance in this
matter.

Sincerely,

Steve Robinson
Unit Manager

Enclosure

# ATTACHMENT 4

MOLZEN V. FEDERAL BUREAU OF PRISONS
Cause No. 1:05-cv-2360-HHK
United States District Court
for the District of Columbia

BP-S148.055  INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS



| TO: (Name and Title of Staff Member) Ms. Becky Pease, Case Manager - Adams Unit | DATE: October 23, 2003 |
|---|---|
| FROM: Michael Molzen | REGISTER NO.: 09229-041 |
| WORK ASSIGNMENT: Ind/Prod 3 | UNIT: Adams |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

This is to confirm the outcome of our meeting this morning, discussing my 10/22/03 request for reconsideration

of custody points and PSF status (Management Variables).  You concluded that "Greatest Severity - 7" was

was appropriate for my instant drug offense which would normally be classified as "Moderate Severity - 3"

by the inclusion in the PSR of a recommendation to the sentencing court to find an enhancement for reckless

endangerment - officer injury, even though I presented transcript evidence that the sentencing court ruled

against reckless endangerment.  The inclusion of Management Variables for judicial recommendation, release

release destination, and lesser severity within my request were not addressed.  Please acknowledge that the

above statements are true and correct to allow further review via the Administrative Remedy Program.

Thank You.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date 10/30/03 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

### Cop-Out Response

As previously stated to you, when scoring the severity of the current offense we go by the total offense behavior as stated in the Pre-Sentence Investigation Report. The points are assigned on the basis of the more severe documented behavior i.e., if the individual was involved in an Assault With Serious Injury (Greatest) but pled guilty to a Simple Assault (Moderate) we would use a score of Greatest. Whether it is called Reckless Endangerment or Obstruction Of Justice, you still knowingly led the officers on a high speed chase and ran in to marked squad cars. The potential for serious bodily injury still existed.

Due to your positive adjustment to a medium level facility, I recommend you for a lesser security management variable that would allow you to be transferred to a low level facility. As explained to you, this was denied by the region.

The Bureau of Prisons designates you to a facility that meets your security needs at the time of your designation. You were designated to a medium facility and placed in the nearest facility to your release destination. Due to you being classified as a medium level inmate, the Judge's recommendation was not followed.

BP-S148.070
SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Ms Becky Pease Case Manager Adams | DATE:<br>October 22, 2003 |
|---|---|
| FROM:<br>Michael Molzen | REGISTER NO.:<br>09229-041 |
| WORK ASSIGNMENT:<br>Ind/Prod 3 | UNIT:<br>Adams |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I request a meeting with you to discuss the recalculation
of my custody points. Please review the attached memorandum
and addendum. Thank you.

(Do not write below this line)

DISPOSITION:

Signature Staff Member                    Date

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

DATE:  October 22, 2003

TO:  Ms Becky Pease  Case Manager Adams Unit

FROM:  Michael Molzen 09229-041

SUBJECT:  Recalculation of Custody Points


     At the semi-annual August Team review, we discussed the
submittal of a lesser-security transfer request to Region for
incarceration to Minnesota to be closer to my family/release
residence.  You submitted this request to Region, which was
reported to me denied.
     P.S. 5100.07 "Custody Classification Form Instructions (BP-
338)" states: "It should be clearly understood that the Custody
Classification Form only recommends an inmate's custody.  The
unit team and/or Warden is the final review authority.  The
intent of the Custody Classification system is to permit staff to
use professional judgment within specific guidelines. Custody
changes are not dictated by the point total.  However, when the
unit team decides not to follow the recommendation of the point
total, they must document the reason(s) for this decision in
writing on the custody review form, and inform the inmate."
     Upon further review of the Custody Classification Form (BP-
338), I find the scoring of the current offense and Public Safety
Factor (PSF) is in error and/or grossly misrepresented.  This
memo is to address the finding of "Greatest Severity" level and
the scoring of "7" as custody points for my current offense.
     According to "Appendix B," greatest severity drug offenses
only apply to those who organized or maintained ownership
interest in large scale drug operations.  I was found to have
merely assisted distribution by off-loading and storing
marijuana, with occasional delivery.  I was viewed as an
"average" participant "recruited" by one of the organizers and
co-defendant. (See PSI page 4-5)  Contrary to the scoring in this
instant case, this co-defendant, incarcerated at this
institution, was scored 3 points under "moderate."
     The form BP-338 also indicates, in relation to the severity
scoring of the current offense, that an officer was injured in a
vehicle chase.  This should not effect this scoring as it is
overrepresented.  The PSI states that these were minor injuries,
but incorrectly states enhancement for "reckless endangerment."
On page 3 of the PSI these injuries are correctly identified as
minor.  Under normal situations, these injuries would not have
required more than a couple of aspirins.
     In the sentencing transcripts, attached, the court found the
facts of the arrest overstated and found plain obstruction rather
than reckless endangerment (S.T. pages 27-29), mitigating the
conduct outside of the failure to stop once law enforcement was
identified.

Recalculation Memo/Molzen
Page 2


    In addition, for the above stated reasons, I find that the
categorization of a public safety factor based upon a finding of
"greatest severity offense" is also in error.  I also find a
number of management variables that should be considered.  (1)
The judge, in sentencing, recommended confinement in Minnesota
(S.T. page 32).  (2) Classification suggests consideration of
release residence criteria "to apply when placement of the inmate
in close proximity to the release residence is the determining
factor in making the designation and causes placement outside
normal guidelines."  (3) The lesser-security criteria is still
available for recommendation for placement outside the normal
guidelines, as I represent a lesser security risk than the
present assigned level.
    I therefore request a hearing before unit team or the warden
in order to correct these errors reported in my classification
records, or to be allowed to pursue Administrative Remedy action
in this regard.
    Thank you.

Chapter 8, Page 21

## CUSTODY CLASSIFICATION FORM - MALE (BP-338)

| A. IDENTIFYING DATA | 1. INSTITUTION CODE | | 2. UNIT | | 3. DATE | |
|---|---|---|---|---|---|---|
| 4. NAME  Mazen, Michael | | | 5. REGISTER NUMBER   09929 - 011 | | | |

**6. CRIMINAL HISTORY POINTS**

| | | | | | |
|---|---|---|---|---|---|
| 7. MANAGEMENT VARIABLES | A - NONE  B - JUDICIAL RECOMMENDATION  D - RELEASE RESIDENCE/PLACEMENT  E - POPULATION MANAGEMENT  G - CIMS | | MED PSYCH TREATMENT  PROGRAM PARTICIPATION  WORK CADRE  PRE RELEASE  MARIEL CUBAN | V - GREATER  SECURITY  W - LESSER  SECURITY | A |
| 8. PUBLIC SAFETY FACTORS | A - NONE  B - DISRUPTIVE GROUP  C - GREATEST  SEVERITY OFFENSE | | SEX OFFENDER  THREAT GOVT OFFICIAL  DEPORTABLE ALIEN | I - SENTENCE LENGTH  L - SERIOUS ESCAPE  M - PRISON DISTURBANCE | C |

**B. BASE SCORING** ////////////////////////

| | | |
|---|---|---|
| 1. TYPE OF DETAINER  0 - NONE  1 - LOWEST/LOW MODERATE  3 - MODERATE  5 - HIGH  7 - GREATEST | | |
| 2. SEVERITY OF CURRENT  0 - LOWEST  3 - MODERATE  7 - GREATEST  OFFENSE  1 - LOW MODERATE  5 - HIGH | | 7 |
| 3. MONTHS TO RELEASE | | |
| 4. TYPE OF PRIOR COMMITMENT  0 - NONE  1 - MINOR  3 - SERIOUS | | 3 |
| 5. HISTORY OF ESCAPE  NONE  >15 YEARS  10-15 YEARS  5-10 YEARS  <5 YEARS  OR ATTEMPTS  MINOR  0  1  1  2  3  SERIOUS  0  3  3  3  3 | | 0 |
| 6. HISTORY OF  NONE  >15 YEARS  10-15 YEARS  5-10 YEARS  <5 YEARS  VIOLENCE  MINOR  0  1  1  2  3  SERIOUS  0  3  3  5  7 | | 2 |
| 7. PRECOMMITMENT STATUS  0 = NOT APPLICABLE  -3 = OWN RECOGNIZANCE OR VOLUNTARY SURRENDER | | 0 |
| 8. BASE SCORE | | 12 |

**C. CUSTODY SCORING** ////////////////////////

| | | |
|---|---|---|
| 1. PERCENTAGE OF TIME SERVED  3 - 0-25%  4 - 26-75%  5 - 76-90%  6 - 91%+ | | 4 |
| 2. DRUG/ALCOHOL ABUSE  2 - WITHIN PAST 5 YEARS  3 - MORE THAN 5 YEARS AGO  4 - NEVER | | 4 |
| 3. MENTAL/PSYCHOLOGICAL STABILITY  2 - UNFAVORABLE  4 - NO REFERRAL OR FAVORABLE | | 4 |
| 4. TYPE & NO  0 - ANY GREAT (100) IN PAST 12 YR  1 MORE THAN 1 HIGH (200) IN PAST 2 YR  OF MOST  2A-ONLY 1 HIGH (200) IN PAST 2 YR  3 MORE THAN 1 MOD (300) IN LAST YR  SERIOUS  3A-ONLY 1 MOD (300) IN PAST YR  4 MORE THAN 1 LOW MOD (400) IN PAST YR  INCIDENT RPT 4-ONLY 1 LOW MOD (400) IN LAST YR  7 - NONE | | 5 |
| 5. FREQUENCY OF DISCIPLINARY RECORD (IN PAST YEARS)  1 - 6+  2 - 3 THRU 5  2 - ONE  3 - NONE | | 3 |
| 6. RESPONSIBILITY DEMONSTRATED  0 - POOR  2 - AVERAGE  4 - GOOD | | 0 |
| 7. FAMILY/COMMUNITY TIES  1 - POOR OR MINIMAL  3 - AVERAGE OR GOOD | | 4 |
| 8. CUSTODY TOTAL | | 26 |

**9. CUSTODY VARIANCE**     CUSTODY TOTAL (SECTION C, ITEM 8)

| | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B A S E | 0 - 6 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | 0 | 0 | -1 | -1 | -2 | -3 | -4 | -5 | -6 |
| | 7 - 9 PTS | +8 | +7 | +6 | +5 | +4 | +4 | +3 | +3 | +2 | +2 | +1 | 0 | 0 | -1 | -2 | -3 | -4 | -5 | -6 | | |
| S C O R E | 10-13 PTS | +8 | +7 | +6 | +5 | +4 | +3 | +3 | +2 | +1 | +1 | 0 | -1 | -2 | -3 | -4 | -5 | | | | | |
| | 14-22 PTS | +8 | +7 | +6 | +5 | +4 | +3 | +2 | +1 | 0 | -1 | -2 | -3 | -4 | -5 | | | | | | | |
| | 23-27 PTS | +8 | +7 | +6 | +5 | +4 | +3 | +2 | +1 | 0 | 0 | -1 | -2 | -3 | | | | | | | | |

**10. SECURITY TOTAL—ADD OR SUBTRACT CUSTODY VARIANCE (ABOVE) TO BASE SCORE (SECTION B, 8)**

| 11. SCORED SECURITY LEVEL | | 12. MANAGEMENT SECURITY LEVEL | |
|---|---|---|---|
| | | | |

1    of the, you know, definition that we brought forth, ah, the

2    minor player in this whole conspiracy.  Umm, but I believe

3    as it sits right now, granted, two have absconded, Mr. Neal

4    has not been sentenced.  I have seen his plea agreement,

5    and I've seen Alvarez's plea agreement.  Umm, I just can't

6    understand why my, ah, sentencing is as much as three times

7    their, ah, proposed sentencing, ah, with my relative

8    conduct being one-third of that, outside of this disaster

9    which called reckless endangerment the evening of the

10   third.

11          THE COURT:  You should be aware that I did not

12   put in a reckless endangerment enhancement.

13          THE DEFENDANT:  Thank you, Your Honor.

14          THE COURT:  There's obstruction.

15          THE DEFENDANT:  Thank you, Your Honor.  Umm --

16          THE COURT:  Mr. Lackner, would you like to go

17   over the arithmetic again?

18          MR. LACKNER:  Your Honor, I think --

19          THE COURT:  I got 30 for conspiracy to

20   distribute.

21          MR. LACKNER:  Right.

22          THE COURT:  Two for obstruction.

23          MR. LACKNER:  As opposed to reckless

24   endangerment.

25          THE COURT:  Correct.

1    THE DEFENDANT:  They're both obstruction.

2    MR. LACKNER:  My only question, Your Honor, is

3    there's a differentiation in the guidelines between the

4    conduct of the two, and I know in the PSI it was geared

5    towards the reckless endangerment as opposed to obstruction

6    of -- obstruction of justice.

7    THE COURT:  And I said I imposed it for

8    obstruction.

9    THE DEFENDANT:  Thank you again, Your Honor. · At

10   that point, umm, there is some justice, and, ah, that will

11   allow me to, umm, proceed with treatment plans and to be

12   able to, ah, I believe umm, outside of the, you know, text

13   within the PSI, to be able to participate, umm, fully in

14   the DAP program if I become eligible and the department of,

15   ah, Bureau of Prisons.  Umm, yeah, I'm not going to play,

16   point fingers who got what, who got where, I got what I

17   got.  Umm, and, ah, these are how these things go.  Umm --

18   excuse me, Your Honor.

19   THE COURT:  Larry.

20   THE DEFENDANT:  I'm okay, thanks.  I guess at

21   this time, umm, as I said the night of the incident, I

22   apologize for my actions.  I still mean I apologize.  I'm

23   truly sorry what happened.  Not for myself, but for others

24   that were involved.  I'm extremely sorry for what I'm going

25   to be putting my family through.  We had been very close,

1    and, ah, well, we won't be that close for a while.  Umm,

2    hopefully we'll have the strength to make it through this.

3    I'm sorry, Your Honor, I think that's it.

4              THE COURT:  Mr. Lackner?

5              MR. LACKNER:  Your Honor, I hadn't planned to say

6    much, and I still won't say too much.  I'm not going to

7    recommend a specific number between the 87 and 108 range,

8    but I think I do want to respond to Mr. Grimshaw's comments

9    about where his client fits in.  I think it's an erroneous

10   characterization to look at Mr. Molzen here as some player

11   who would fall beneath some of the other people that they

12   have mentioned.  We looked at this carefully, ah, I'm not

13   going to go into any details, but to characterize it as a

14   miscarriage of justice that he gets what he's got and the

15   other people got what they're going to get, or potentially

16   capable of getting under the guidelines is just an

17   erroneous characterization of where the different people

18   fall in with their roles.  I understand now that you've

19   added a two-point enhancement for obstruction as opposed to

20   reckless endangerment.  Unless, however that comes out, I

21   don't have any dispute with that, but to hear Mr. Molzen

22   stand here and say he didn't know that they were police

23   officers when at the time of the detention hearing, ah, one

24   of the officers who was involved who got, I believe was the

25   one who got hit, his vehicle got hit --

1      the blow against them is wearing a brown suit and standing

2      in front of me.  You are the one who chose to take the

3      steps that will pressure your family, that will jeopardize

4      your relationships, and will take you away.  Not another

5      person in this room made those choices.  And when you made

6      those choices, you started a process that wound up here.

7      And that's how it goes.

8          I am charged to follow the law, and I do so because you

9      have failed to follow the law.  And that's how the system

10     works.  The sentencing guidelines are more than clear about

11     your role in the offense.  I have applied the sentencing

12     guidelines, as you should be quite aware, to your benefit.

13     I could quite well have decided, well, the parties agreed

14     to it, we'll put him in a category three, we'll just ship

15     him off.  I didn't do that.  I individually differentiated

16     and tried very hard to do that, tried to be as fair as I

17     can.  But, sir, you are responsible for what you have done,

18     and on that basis, I will impose the sentence.  If you have

19     a choice, where would you choose to serve your time of

20     confinement?

21              THE DEFENDANT:  Close to the metro area, Your

22     Honor.

23              THE COURT:  I will recommend that you be confined

24     in the state of Minnesota.  On that basis, I can, you have

25     the hope at least of winding up in Waseca is possible and

# ATTACHMENT 5

MOLZEN V. FEDERAL BUREAU OF PRISONS
Cause No. 1:05-cv-2360-HHK
United States District Court
for the District of Columbia

BP-S148.055  **INMATE REQUEST  ) STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member)<br>Ms. P. Fredricks, CMC | DATE:<br>November 15, 2003 |
|---|---|
| FROM:<br>Michael Jay Molzen | REGISTER NO.:<br>09229-04? |
| WORK ASSIGNMENT:<br>Ind/Prod 3 | UNIT:<br>Adams |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

---

I sent you a copy of issues I believe have been misrepresented

in the calculation of my Custody Level. When we talked I realize

that you wanted a couple of weeks to look into these issues.

Since then Ms. Pease has responded specifically, stating that the

scoring of Greatest Severity 7 points based on two officers being

injured during attempts to arrest.  These injuries were minor in

nature ("strained" wrist and bump on the head) and can not be

view as "serious" injury as required by the present scoring of

custody points, as indicated by Ms. Pease response.  Please find

as the Judge did in this case that these injuries are over-represented.

(Do not write below this line)

---

DISPOSITION: I have reviewed your PSI which states, "Molzen began to drive away at a high
rate of speed. Molzen hit several law enforcement vehicles including a Lakeville Police Department
Marked squad car which had its red lights activated. During this flight, Molzen hit a law
enforcement vehicle head-on, which resulted in two officers being transported to the hospital
with minor injuries. The Suburban continued at a high rate of speed down County Road 70
for approximately six miles..." Although you were convicted of a drug crime, your actions as
the driver of the Suburban cause us to view the offense behavior similar to an assault
case with the vehicle you drove as the weapon. Although the officers' injuries were
minor, your actions were aggressive and intimidating, and likely to cause serious bodily
injury. Accordingly, your offense has correctly been scored as a 7-point Greatest
Severity case.

| Signature Staff Member | Date |
|---|---|
| P. FREDERICK  *(signature)* | 11/24/2003 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94