IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL JAY MOLZEN,                     )
           Plaintiff,                   )     Civil Case No. 05-2360(HHK)
                                        )
vs.                                     )
                                        )
                                        )
FEDERAL BUREAU OF PRISONS,              )
           Defendant.                   )

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION
TO DISMISS COMPLAINT

COMES NOW plaintiff, Michael Jay Molzen, pro se, and moves
this Honorable Court to deny Defendant's Motion to Dismiss com-
plaint or, in the Alternative, for Summary Judgment. Plaintiff
provides affidavits and memorandum supporting plaintiff's position
that there is a genuine issue for trial and refutes defendant's
defenses which allege this court has due cause to summarily dis-
miss this instant complaint.

Plaintiff provides, in support of this motion, an addendum
containing exhibits backing an affidavit which presents facts
allowing the continued presentation of a bona fide Privacy Act
claim.

Plaintiff also includes a memorandum of law that also support
his Privacy Act claim and refutes defendant's position allowing
summary judgment in their favor.

Plaintiff also includes rebuttal to defendant's Statement of
Material Facts as to which there is No Genuine Dispute, as plaint-
iff finds these allegations inconsistant with his personal exper-

RECEIVED

JUL  5 2006

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL JAY MOLZEN,                    )
            Plaintiff,                 )    Civil Case No. 05-2360(HHK)
                                       )
vs.                                    )
                                       )
                                       )
FEDERAL BUREAU OF PRISONS,             )
            Defendant.                 )

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DENY
DEFENDANT'S MOTION TO DISMISS COMPLAINT

Defendant states that this "complaint should ... be dismissed for failure to state a claim [if] it appears beyond doubt that the plaintiff can prove no sets of facts to support his claim which would entitle him relief." (Memorandum in Support of Motion to Dismiss (Memo), p. 4, citing Conley v Gibson, 355 U.S. 41, 45-46 (1957)). Plaintiff has stated a valid claim under the Privacy Act and now supports them with facts presented as evidence in this instant reply to defendant's request for summary judgment under Rule 56, Federal Rules of Civil Procedure.

Defendant cites Deters v U.S. Parole Comm'n, 85 F.3d 655 (D.C. Cir. 1996) as authority for presenting a proper claim for relief under the Privacy Act. Deters provides four elements plaintiff's must address in order to establish a cause of action under the Act. (Memo., p. 3).

First of all, defendant alleges that plaintiff cannot establish the harm claim in the complaint "rises to the level of an adverse determination under the Privacy Act." Id. See Deters 85 F.3d at 657 ("[plaintiff] must prove ... he has been aggrieved by an adverse

determination.").

Plaintiff sought transfer to a facility in Minnesota based on near release and judge recommendation criteria. This request was denied upon the grounds that plaintiff's custody score precluded such a transfer, as the reading of offense conduct in the PSIR by BOP staff required greatest severity scoring and public safety factor classification. Reliance of the allegations in the PSIR increased plaintiff's custody score four points, bringing him from a low "8" to a medium "12", precluding him from all four federal institutions located in Minnesota (three low and one minimum). Had plaintiff been scored a moderate on arrest conduct, as allowed by obstruction of justice (Add. Exhibit R), he would have been incarcerated, as his co-defendant was, in the State of Minnesota.

Provided this fact situation, if the BOP would have determined arrest conduct, as the judge found by the evidence tendered, was non-violent on the part of plaintiff and amounted to obstruction of justice, the outcome of these requests for transfer to a low security institution in plaintiff's home state would have been different.

The Privacy Act define an adverse determination as one "relating to the qualifications, charactor, rights, or opportunities, or benefits to, the individual that may be made on the basis of such record ...." 5 U.S.C. § 552a(g)(1)(C). This determination made in regards to plaintiff's charactor prevented a transfer opportunity allowing for increased educational opportunities and allow increased family visitation to strengthen family ties.

The second Deters element defendant claims plaintiff cannot

2

overcome (that the agency failed to maintain records with the accuracy necessary to assure fairness in the decision, Deters, 85 F.3d at 657) is that the BOP failed to accurately maintain the record as "evidence indicates that plaintiff's presentence report is factually accurate." (Memo., p. 3).

Defendant has presented no evidence to support such a claim. While defendant agency ignored a verifiable ruling of a U.S. District Court on the controverted arrest conduct, they maintained that making a request to the United States Probation Office (USPO) input on the matter "reasonable" in assuring the accuracy of the information contained in the file. A period of two years and several requests for clarification passed before the USPO responded (three months after this complaint was filed). Defendant presents this letter from the USPO, plaintiff assumes, as such evidence that the PSIR is "factually accurate."

The letter presented in the defendant's memorandum (Memo., Auterson, Att. 2) should not qualify as evidence as it is not verified true and correct, is not based on personal knowledge, and basically amounts to third party hearsay (information the Privacy Act was enacted to prohibit in agency record keeping. See Waters v Thornburgh, 888 F.2d 870, 874 (D.C. Cir. 1989)). Additionally, the USPO is incompetent to make a factual determination of the sentencing judge's from of mind, or to what evidence he considered, in his determination which was clearly a departure from the position presented by the USPO in the PSIR. Plaintiff presented evidence outside of that provided by the PSIR which showed his actions during arrest as non-violent. The court's determination

3

reflects this finding.

The USPO states in her letter that "the Court simply chose, as indicated in the transcript, to apply the guidelines to [plaintiff's] benefit." (Memo., Auterson, Att. 2).  Plaintiff asserts that the only benefit he was granted by this court determination was the knowledge that the arrest conduct would not be viewed as violent, as the finding of reckless endangerment or obstruction of justice provide for the same upward sentence enhancement of two levels (in this case approximately eighteen months).

The USPO further stated that "the Court chose to use the facts contained in the Offense Conduct section of the presentence investigation report to apply an enhancement for Obstruction of Justice and not the enhancement for Reckless Endangerment During Flight." As stated above, this statement cannot be considered evidence and is found false by the facts presented by the plaintiff (Affidavit, p. 2, ¶ 4) outside of the allegations provided by the PSIR. Again, the USPO is not in a position to testify to what the court considered in it's ruling in favor of the plaintiff. Plaintiff posits that the court could not have made the ruling it did solely on the allegation presented in the PSIR as these indicate clearly violent, reckless behaviors.

The third Deters element (the agency's reliance on the inaccurate records were the cause of the adverse determination), 85. F.3d at 657, which defendant claims plaintiff cannot overcome as the "error" did not cause "defendant to make an adverse determination against him." (Memo., p. 3).

Plaintiff provides, as presented above, that the adverse

determinations were in providing his non-violent offense behavior

be deemed violent, classifying plaintiff with a "public safety

factor," scoring additional custody points to preclude incarc-

eration in plaintiff's home state (recommended in the Judgment),

and, thus, keeping him from valuable educational opportunities

and increased family visits to allow strengthening family ties

(plaintiff has received no visits since the BOP has transfered

him to FCI Terre Haute in April of 2005).

Finally, in regards to Deters fourth element (the agency must

act intentionally or wilfully in failing to maintain accurate

records), defendant alleges that this element cannot be proved by

plaintiff because the use of the misinformation was done in good

in good faith (Memo., pp. 3-4).

Deters provides the basic requirements for the finding of

wilfull or intentional failures to maintain accurate records in

assuring fairness in determination regarding the individual by

proving that the defendant agency "acted with something greater

than gross negligence," Tijerina v Walters, 821 F.2d 789, 798

(D.C. Cir. 1987), or by presenting that the defendant agency com-

mitted the act without grounds to believe the act was lawful, or

by "flagrantly disregarding others' rights under the Act." Al-

bright v United States, 732 F.2d 181, 189 (D.C. Cir. 1984). Deters

also cites that a "violation must be so patently egregious and

unlawful that anyone undertaking the conduct should have known it

unlawful." Laningham v United States Navy, 813 F.2d 1236, 1242

(D.C. Cir. 1987).  See Deters v U.S. Parole Comm'n, 85 F.3d 655,

660 (D.C. Cir. 1996).

5

Plaintiff points to case authority of this Circuit that has held that the wilfull or intentional standard does not require the defendant agency to set out purposely to violate the Privacy Act. See <u>Tijerina v Walters</u>, 821 F.2d 789 (D.C. Cir. 1987).

Plaintiff continues to present that, at sentencing, the U.S. District Court made an explicit finding, a ruling, that there was a finding of fact that the Court found inconsistant with those presented in the PSIR. The PSIR made allegations which presented the arrest conduct of plaintiff as violent which required a enhancement for reckless endangerment, as recommended. The Court, on the other hand, found this arrest conduct, by the preponderance of all the evidence presented to the court, was not to be considered Reckless Endangerment, but that of Obstruction of Justice, conduct that the BOP construes as non-violent, outside the classification of greatest severity offense and public safety factor and squarely in moderate level classification as provided by policy. (Add. Exhibit S).

The U.S. District Court Judgment was forwarded to the BOP, along with the PSIR. Plaintiff finds that the Judgment is the controlling document allowing his ongoing incarceration within the BOP. The Judgment put the BOP on notice that the "Court adopts the factual findings and guideline application as indicated in the presentence report, <u>excedpt as indicated at the hearing</u>." (Add., Exhibit B; Judgment, p. 5) (emphasis added).

Defendant agency has promulgated policy when classifying the custody of inmates for designation of location of incarceration. PS 5100.07 requires that "**In determining 'Severity of Current Offense'**

- 6

staff **shall** review the Statement of Reasons, if provided, (attached to the Judgment) and ensure the information provided is appropriately used **classifying the inmate."** (emphasis original) (Add., Exhibit C).

Program Statement (PS) 5100.07 also provides instruction and policy for classifying and designating inmates (applicable to redesignations also). The Program objective is to place inmates in facilities through an objective system of classification. (Add., Exhibit T).

In Chapter 5, section 7 of PS 5100.07, it instructs the Community Corrections Manager (CCM), who originally scores the inmate's custody and classification, "to make reasonable efforts to obtain documentation" that "reflect the most severe documented instant offense behavior." (Add., Exhibit

BOP regulation, under 28 C.F.R. § 524.10, states:

"It is the policy of the Bureau of Prisons to classify each newly committed inmate within four weeks of the inmate's arrival at the institution designated for service of the sentence and to conduct subsequent program reviews for each inmate at regular intervals. The Warden shall establish procedures to ensure that a newly committed inmate is promtly assigned to a classification team."

28 C.F.R. § 524.15 provides that "An inmate may appeal, through the Administrative Remedy Program, a decision made at initial classification or at a program review."

As provided above, PS 5100.07 requires that the Statement of Reasons within the Judgment to ensure the inmate is classified appropriately. An objective reading of this Statement of Reasons would indicate there was a ruling of the court based outside of those included in the PSIR. The PSIR agreed with the plaintiff that

7

he should be sentenced to conduct under that stated in the indict-
ment. The Court also agreed.   The PSIR agreed with plaintiff that
his prior criminal history should not be scored outside catagory I.
The Court agreed.   The PSIR concluded plaintiff's arrest conduct
was assultive and recommended Reckless Endangerment During Flight.
The Court disagreed, finding instead that the totality of the
evidence showed plaitiff guilty of non-violent Obstruction of
Justice, which also required a two level guideline enhancement of
approximately eighteen months. This was the only disagreement between
the Court and the PSIR.

   Policy further states: "... Total offense behavior is to be
considered, utilizing the most serious offense or act committed.
However, in drug conspiracy cases, the individual will be held
accountable as documented by the judge in the statement of reason."
(PS 5100.07; Appendix B, Special Instructions, p. 5).   This policy
further provides instruction as to developing accurate facts in
the file for use in decision making as to the inmate.

   The policy and regulation show that steps needed to be taken
to ensure that the information used in making the adverse determin-
ation to keep plaintiff from his family and valuable educational
opportunities were not taken and ignored through the entire BOP
organization.   When part of the operating system, when policy is
ignored it must be done so in a willful and intentional manner.

   Based upon the standard of review presented in Conley v Gib-
son, 355 U.S. 41, 45-46 (1957) and the necessary elements for a
Privacy Act claim from Deters v U.S. Parole Comm'n, 85 F.3d 655
(D.C. Cir. 1996), plaintiff assers he has met the burden of mak-

8

ing a showing that there is a genuine Privacy Act dispute as required by Laningham v Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (providing evidence that would permit a jury finding on plaintiff's favor).

Plaintiff counters defendant defenses alleged in the Memorandum in Support as follows:

### A.   Statute of Limitations

Defendant wishes that this Court summarily dismiss this cause of action on the grounds that it lacks subject matter jurisdiction, as it this complaint is allegedly being presented to this Court outside of the limitations period provided by statute.

Plaintiff finds defendant citation and quotation from Title 5 U.S.C. § 552a(g)(5) misleading and presented out of context in the statement that "the action may be brought at any time within two years after discovery by the individual of the misrepresentation." This quotation is gleaned from the "exception" provision within the general requirement that "An action to enforce any liability created under this section may be brought ... without regard to the amount in controversy, within two years from the date on which the cause of action arises ...." 5 U.S.C. § 552a(g)(5).

The question of when the "date on which the cause of action arises" is answered by authority of the D.C. Circuit in Spannaus v Dept. of Justice, 824 F.2d 52, 56-7 (D.C. Cir. 1987). This case held that claims of this nature, raised against an agency of the United States government, cannot be maintained in a court unless a party has exhausted all administrative remedies to all claims

presented in the suit. Evidence provided by both plaintiff and
defendant show the issues were being presented administratively
for nearly two years prior to being filed in this Court. In fact,
plaintiff did not receive a response to the administrative appeal
from the BOP Central Office until after he filed the complaint, as
it was returned to plaintiff outside the time required for such a
response. See 28 C.F.R. § 542.18 ("... If the inmate does not re-
ceive a response within the time allotted for reply, including ex-
tension, the inmate may consider the absence of a response to be
a denial at that level.") The time for response, with extention,
on this appeal was November 9, 2005 (Add., Exhibit P). The BP-11
response was dated November 9, 2005 (Memo., Marvel, Att. 2) but
plaintiff did not receive the reply until November 16, 2005.
(Molzen Affidavit, ¶ 43).

To hold for the defendant's position that plaintiff is barred
by the limitation period, through the evidence of plaintiff's
requests to staff on this issue in October and November of 2003 as
the "discovery of the misrepresentation," would be in error and un-
supported by any fact or allegation to meet the criteria necessary
by statute.

Defendant quotes from the provision of the statute which pro-
vides a suit be presented within two years of the discovery of the
misrepresentation when "an agency has materially and willfully mis-
represented any information required under this section to be dis-
closed to an individual ...." 5 U.S.C. § 552a(g)(5)(emphasis added).
As plaintiff is not making a claim against a required disclosure by
the agency, instead that the BOP failed to take reasonable steps to

10

maintain records with such accuracy to provide fairness in their decisions regarding him, Sellers v BOP, 959 F.2d 307, 312 (D.C. Cir. 1992), defendant's reliance on this provision within the statute is misplaced and does not allow for the dismissal request upon a time limitations bar.

Plaintiff can point to several dates, provided within the affidavit provided along with these pleadings, to which the limitation would toll, but the argument is moot as they are all clearly within the period provided under the Privacy Act for presenting a claim to the U.S. District Court.

### B. Collateral Attack of Agency Decision

To further support a request for summary judgment, defendant claims that plaintiff is impermissibly using the Privacy Act to collaterally attack an agency decision. Defendant provides citation of recent case authority that allegedly support this claim but includes no quotation and plaintiff cannot access these cases as per docket number or Westlaw citation.

The following legal argument, however, fails to promote this claim, but instead cites Toolasprashed v Bureau of Prisons, 286 F.3d 576, 582 (D.C. Cir. 2002) to reargue the Deters elements in the form that, in order for the plaintiff to prevail on a Privacy Act claim for damages, the pleadings "must show that (1) the agency failed to maintain accurate records, (2) the agency's conduct was intentional or willful, and (3) an adverse determination was made respecting plaintiff due to the inaccurate record." (Memo., p. 11).

Plaintiff rests on the facts presented above as to the BOP

11

relying upon misinformation from the Central File, knowing that a verifiable challenge to this information was submitted, was accessable, and within the agency's power and control to cross-reference the material within the file (See Judgment and transcripts, Add., Exhibit B; Memo, Auterson, Att. 4) to support decisions affecting plaintiff's custody, classification, and incarceration location adversely.

The defendant claims that the "BOP has made reasonable attempts to verify the accuracy of the information ..." (Memo., p. 12) in accordance with policy, through the use of "Sellers" requests to the USPO.

Plaintiff posits that this defense claim falls short as it can be shown, through policy, that the agency is required to look to the Judgment (Statement of Reasons) when classifying an inmate, especially inc ases of drug conspiracies, as in the case here. (Add., Exhibit

The repeated reference to the "Sellers" request by the BOP to the USPO to verify statements made in the PSIR is misleading as to the holding of Sellers v BOP, 959, F.2d 307 (D.C. Cir. 1992). The D.C. Circuit held.

> "As long as the information contained in the agencies files is capable of being verified, then, under sections (e)(5) and (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency wilfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages."

Sellers, supra, at 312.

Defendant states BOP staff attempts to seek information from the author of the PSIR, as to the false allegations presented in

12

the document, were "reasonable steps" in assuring plaintiff that
accurate records were being used in decision-making, even when
plaintiff provided them with specific court rulings indicating
that the information within the PSIR was was found inconsistant with
facts presented to that court, the finder of fact in this instant
case.

The Privacy Act requires the BOP, in maintaining a system of
accurate records, to collect information to the greatest extent
practicable directly from the subject individual when the informa-
tion may result in adverse determinations regarding an individual's
rights, benefits, and privileges under federal programs. 5 U.S.C.
§ 552a(e)(2). "This section was designed to 'discourage the col-
lection from third party sources and therefore encourage the accur-
acy of Federal data gathering.' ... (quoting Analysis of House and
Senate Compromise Amendments to the Federal Privacy Act, 120 Cong.
Rec. 40,405, 40,407 (1974)." Velikonja v Miller, 362 F.Supp.2d. 1,
19 (D.D.C. 2004) (case cite omitted).

The Velikonja court held that, in failures to comply with Pri-
vacy Act requirements, "the inquiry must be whether the agency's
compliance with [the Privacy Act] would have changed the outcome."
Id. This case also holds that records are maintained with adequate
fairness only if the file accurately reflect the nature of the
evidence, such as   the information used from "a hearsay report."
Velikonja, supra, at 17.

On this issue, the Velikonja court cited D.C. Circuit case
authority holding that if "damaging information was 'based upon a
demonstratably false premise,' retention of the information would

13

violate    the Act. <u>White v Office of Pers. Mgm't</u>, 787 F.2d 660,
662 (D.C. Cir. 1986)." <u>Velikonja</u>, supra, at 16.

The facts of this instant case can be applied to the author-
ity above. Prior to presenting the PSIR to the court, it is a
compilation of "hearsay" and allegations, relying mostly on prosec-
ution files in reporting sentencing factors to the court.  Rule 32,
Federal Rules of Criminal Procedures, allow for the objection of
these allegations and, in a ruling of the facts by the U.S. District
Court, the objections allowed a ruling in plaintiff's favor.

The BOP willfully and intentionally ignored the will of the
court, and its finding of fact, and instead relied upon alleged
arrest behavior presented in the PSIR to make decisions adverse to
plaintiff's incarceration location needs.  This is not about "col-
laterally attacking" an administrative decision; it is the BOP's
violation of the Privacy Act in its refusal to acknowledge an order
of the court identifying misinformation found in the PSIR, and the
continued adverse custody and classification decisions made utiliz-
ing that information, and that information alone.

<u>Deters</u> further provides instruction from the D.C. Circuit by
stating: "[i]n the typical Privacy Act case ... it is feasible,
necessary and proper, for the agency and, in turn, the district
court to determine whether each filed item of information is accur-
ate.' [<u>Doe v United States</u>, 821 F.2d 694 (D.C. Cir. 1987)(en banc)].
This is because in the typical case the 'truth' is 'clearly prov-
able' or 'relatively easily ascertainable.' [<u>Sellers v BOP</u>, 959
F.2d 307, 311 (D.C. Cir. 1992)]." <u>Deters</u>, 85 F.3d at 658.

Plaintiff does not claim this case to be other than a "typical

14

Privacy Act case." The only exception this instant case provides would be the fact that the U.S. District Court already made the finding of fact and found that the "filed item" was inaccurate. This is the basis for the complaint before this court and is shown clearly as a claim upon which relief may be granted.

### C.  BOP Exemption from the Privacy Act

Defendant raises the defense, allowing for summary dismissal, that the BOP Inmate Central Records System is exempt from Privacy Act claims. Plaintiff asserts, given the facts of this instant case, this defense lacks merit.

This Privacy Act complaint was submitted under Title 5 U.S.C. § 552a(e)(5). To, allegedly, support this exemption claim, defendant cites Deters (Memo., p. 7) to support that "the BOP has properly exempted its Inmate Central Record System." This citation, however, states:

> "The Commission ... has not exempted the system from subsection (e)(5) .... See OMB Privacy Act Guidelines, 40 Fed. Reg. 28,948, 28,964 (1975) (Subsection (e)(5) 'places the emphasis on assuring the quality of the record in terms on the use of the record in making decisions affecting rights, benefits, entitle ments, or opportunities ... of the individual."

Deters, supra, at 658 n. 2.

Without citation of the relevant subsection, defendant claims that 28 C.F.R. § 16.97 exempts the BOP Inmate Central Recors System from § 552a(e)(5), providing, "in part", a citation from subsection (k)(1) and (2) to support the claim. (Memo., pp. 8-9).

Subsection § 16.97(k)(1) allows for the exemption of this system of records in § 16.97(j) in the collection of "information that

may be relevant to the law enforcement operations of other agencies."
Subsection (k), however, initially qualifies this exemption practice
by providing:

> "Where compliance [of § 552a(e)(5)] would not appear to
> interfere with or adversely affect the law enforcement
> process, and/or where it may be appropriate to permit
> individuals to contest the accuracy of the information
> collected, e.g. public source material, or those sup-
> plied by third-parties, the applicable exemption may be
> waived, either partially or totally, by the Bureau."

28 C.F.R. § 16.97(k).

Policy, in this instant case, provides plaintiff with permis-
sion to contest the accuracy of his files. See PS 5800.11(c) ("An
inmate may challenge the accuracy of the information in his or
her Inmate Central File.) and Memo., Auterson, Att. 1.  Throughout
nearly two years of addressing this issue administratively, plaint-
iff was never made aware of this exemption, nor was it raised in
any level of remedy in the BOP Administrative Remedy Program.
Contrary to this defense asserted within defendant's answer, the
BOP Central Office cites the above Program Statement and provided
that "an inmate may challenge the accuracy of information in his
central file and is required to provide staff with sufficient in-
formation in support of a challenge ...." (Memo., Marvel, Att. 2).

For the above stated reasons, plaintiff prays that this Court
find that defendant agency has waived this defense, or alternative-
ly, that it does not apply to this instant Privacy Act claim.

### D. Due Process and the Privacy Act

Defendant claims that no relief should be allowed under the
Privacy Act as there has been no violation of plaintiff's Due Proc-

16

ess Rights. Plaintiff does not see the requirement of such a violation in order to support a civil suit under the Act.

Title 5 U.S.C. § 552a(e)(5) states:

> "Agency requirements. Each agency that maintains a system of records shall ... maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." [emphasis added]

and 5 U.S.C. § 552a(g)(1)(C) provides for:

> "Civil remedies. Whenever any agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness and completeness as is necessary to assure fairness in any determination relating to the qualification, character, rights, or opportunities of, or benefit to the individual that may be made on the basis of such record and consequently a determination is made which is adverse to the individual[,] the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this section." [emphasis added]

Defendant cites <u>Olim v Wakinekona</u>, 103 S.Ct. 1741 (1983) to support the position that the BOP has no obligation in placing an inmate in any particular prison or region, or provide any reason for the transfer of any inmate. Plaintiff's understanding of BOP policy touching this area conflicts with this interpretation of BOP responsibility.

Program Statement 5100.07 provides instruction to BOP staff on custody classification. ("Custody classification is a procedure whereby inmates are assigned levels accourding to their criminal histories and institutional behavior/adjustement.") (Add. Exhibit S). The classification is reviewed at each annual TEAM (<u>Id.</u>). While this classification process only recommends custody levels and permits the use of professional judgment, "when the unit team decides not to follow the recommendations of the point total, they

17

document the reason(s) for this decision in writing on the custody
review form, and inform the inmate." (Id.; PS 5100.07, Ch. 8 pp. 1-
2).

The program objective, by providing instruction through the PS
5100.07 "Security Designation and Custody Classification Manual,"
is that "inmates will be placed in facilities commensurate with
their security and program needs through an objective system of
classification." (Add., Exhibit S)(emphasis added).

It has been plaintiff's personal experience by witnessing the
speed of which inmates are transfered to other institutions when
their "points" fall outside the range of present custody classific-
ation. These transfers are provided whether the inmate requests
them or not, even if he wishes to stay at the present institution.

Relinace on Olim is misplaces as there where no standards to
consider on the application of regulations and policy in that case.
The ruling was based upon a state procedure allowing for "Administr-
ator" discretion in transfer decisions, without providing any ob-
jective or defines criteria to support the decision. Olim, 75
L.Ed.2d at 825.

CONCLUSION

Plaintiff has shown that the facts presented in this instant
case show that the BOP used information from the PSIR that was found
inconsistant with a cort ruling and decision, that the BOP adversely
determined plaintiff's arrest conduct to require "greatest severity
offense" designation and classification as "public safety factor,"
that the reliance of the BOP on the PSIR misinformation was the only

18

document the reason(s) for this decision in writing on the custody review form, and inform the inmate." (Id.; PS 5100.07, Ch. 8 pp. 1-2).

The program objective, by providing instruction through the PS 5100.07 "Security Designation and Custody Classification Manual," is that "inmates will be placed in facilities commensurate with their security and program needs through an <u>objective system of classification</u>." (Add., Exhibit S)(emphasis added).

It has been plaintiff's personal experience by witnessing the speed of which inmates are transferred to other institutions when their "points" fall outside the range of present custody classification. These transfers are provided whether the inmate requests them or not, even if he wishes to stay at the present institution.

Relinace on <u>Olim</u> is misplaces as there where no standards to consider on the application of regulations and policy in that case. The ruling was based upon a state procedure allowing for "Administrator" discretion in transfer decisions, without providing any objective or defines criteria to support the decision. <u>Olim</u>, 75 L.Ed.2d at 825.

CONCLUSION

Plaintiff has shown that the facts presented in this instant case show that the BOP used information from the PSIR that was found inconsistant with a cort ruling and decision, that the BOP adversely determined plaintiff's arrest conduct to require "greatest severity offense" designation and classification as "public safety factor," that the reliance of the BOP on the PSIR misinformation was the only

18

reason for this enhance classificationand custody designation, and
the BOP willfully ignored evidence that countered this information
to refuse plaintiff a transfer to his home state, as per judicial
recommendation, causing him to miss out on valuable educational
opportunities and persoanl family visits that would have allowed
for strengthening family and community ties, allowing smoother in-
tegration into society upon release.

Plaintiff has countered defendant defenses in which claims
would have allowed summary judgment. Plaintiff has clearly shown,
by the plain language of the statute, that his cause is within the
limitations period of two years from the exhaustion of administra-
tive remedy, that the BOP waived any possible exemption from the
Privacy Act (totally and completely), and that policy and procedure
provided by the BOP and regulation allow such a claim such as this
to be presented within the four corners of the statute.

Plaintiff has shown that he has presented this complaint in
good faith and for no other reason than to address a valid Privacy
Act claim.   Whether the defendant finds that a "collateral attack"
or lack of constitutional claim precludes such relief seems irrel-
evant.   Nowhere in the Act does it provide that plaintiff must
show such a claim as the one defendant presents as one that merits
this court's attention.

WHEREFORE plaintiff asserts that he has met the burden of
countering defendant's request for summary judgment and has sub-
mitted a valid claim upon which relief may be granted.   As such,
plaintiff prays that defendant's Motion to Dismiss Complaint or,
in the Alternative, for Summary Judgment be DENIED and allow the

complaint to proceed as allowed under Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: June 28, 2006

Michael Jay Molzen, pro se
Reg. No. 09229-041
P.O. Box 33
Terre Haute, IN   47808

20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL JAY MOLZEN,                      )
      Plaintiff,                       )
                          )    Civil Case No. 05-2360(HHK)
vs.                                      )
                          )    CERTIFICATE OF SERVICE AND
FEDERAL BUREAU OF PRISONS,               )    MAILING
      Defendant.                       )

THIS WILL CERTIFY that the following documents were placed in the legal mail system at the institution, with proper postage affixed, for service and mailing:

(1)  Plaintiff's Motion to Deny Defendant's Motion to Dismiss ...

(2)  Plaintiff's Reply to Defendant's Statement of Material Facts ...

(3)  Memorandum in Support of Plaintiff's Motion to Deny ...

(4)  Affidavit of Michael Jay Molzen

(5)  Addendum

(6)  Certificate of Service and Mailing

addressed as follows:

Clerk of Court
U.S. District Court
for the District of Columbia
333 Constitution Ave., NW
Washington, DC    20001

Diane M. Sullivan, AUSA
Office of the U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, DC    20530

on this 30th day of June, 2006. I, Michael Jay Molzen, declare this true and correct, under the penalty of perjury, as provided by 28 U.S.C. § 1746.

Michael Jay Molzen, affiant