IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL JAY MOLZEN, )
          Plaintiff, )
           )    Civil Action No. 05-2360(HHK)
vs. )
           )
           )
FEDERAL BUREAU OF PRISONS, )
          Defendant. )

## AFFIDAVIT OF MICHAEL JAY MOLZEN

In compliance with Rule 56(e), Federal Rules of Civil Pro-
cedures, plaintiff, Michael Jay Molzen, proceeding in this instant
matter pro se, respectfully submit the following statements of fact
as related to this cause of action showing that there is a genuine
issue for trial and claim for relief, contrary to the assertions
in Defendant's Motion to Dismiss Complaint or, in the Alternative,
for Summary Judgment, and the attached Memorandum of Support.

The following verified statements provided below are to be
deemed proper evidence before this Court and are fully supported,
where possible, as required under Rule 56(e) by attached exhibits.

(1)    During the proceedings in the district court, in the criminal
prosecution leading to plaintiff Molzen's (Molzen) incarceration,
defense counsel refused to object to arrest conduct presented as
violent by the prosecution.  When the plea agreement was presented,
Molzen objected to the presentation of these allegations of arrest
conduct as being false.  Defense counsel stated that the Assistant
U.S. Attorney would not accept any other plea agreement.

(2)    When presenting that Molzen would proceed to trial instead

of pleading guilty to conduct he did not commit, counsel refused,
stating that the prosecution would recommend a twenty year sentence
if the case was presented before a jury. Molzen signed the plea
agreement under protest.

(3)   After Molzen pleaded guilty in the district court, the Pre-
sentence Investigation Report (PSIR) was order prepared by the
court.   The United States Probation Office (USPO) represented
arrest conduct as reflected in the position of the Assistant U.S.
Attorney (AUSA). (Plaintiff Addendum (Add.), Exhibit A).   Molzen
requested defense counsel object to this inclusion of this conduct.
Again, defense counsel refused and tendered no objections to any of
the allegations presented in the PSIR.

(4)   Prior to sentencing, Molzen wrote the judge in order to pre-
sent  evidence of the facts in his case as he experienced them that
were not being presented in the document being presented to the
court otherwise.   Based upon this presentation of evidence, the
sentencing judge "did not put in a reckless endangerment enhancement."
(Defendant's Memorandum in Support (Memo), Declaration of Theresa
Marvel (Marvel), Attachment 4; Sentencing Transcript 00-CR-25(2)
JMR/FLN, 11/30/00, page 27).   The judge did, however, find that the
conduct amounted to obstruction of justice, rather that reckless
endangerment, and increased his guideline sentencing range two
levels (as also provided in reckless endangerment). Id.

(5)   By the district court's finding of Molzen's arrest conduct,
as that presented to the court in direct evidence from Molzen,
Molzen believed he had been exhonerated of the allegations of vio-
lent conduct and intent during arrest.

(6)    The sentencing court made provisions for this ruling in the Statement of Reasons portions of the Judgment, providing that the facts presented in the PSIR were found true unless indicated in the sentencing hearing. (Add., Exhibit B).  Again, Molzen felt vindic- ated from the misinterpretation of his offense conduct that was presented by the government and PSIR by this ruling.

(7)    Molzen was designated and transported to the Federal Correct- ional Institution (FCI) at Oxford, Wisconsin, a medium/high secur- ity prison, after sentencing.  Molzen was told by the initial TEAM classification to wait eighteen months before requesting a trans- fer to an institution in Minnesota.

(8)    Molzen's TEAM had changed during this eighteen month period. Molzen was not considered for tranfer to Minnesota due to his cust- ody points and classification.  Molzen was told to wait until his "points" dropped to allow low security transfer to his home state.

(9)    Prior to his August 2003 TEAM, Molzen indicated his desire to transfer, again, and asked that the issue be put on the agenda. Molzen was told, at TEAM, that his custody points precluded any low security transfer (three of the four federal institutions in Minnesota are low security, one is a minimum "camp"), and that his "points" may never be low enough to allow this classification. Due to his repeated requests, Molzen was reluctently allowed a request to the Bureau of Prisons (BOP) North Central Regional Office (Region) for a lesser security transfer.  This request was denied without comment or reason.

(10)  From this denial, Molzen sought justification for the great- est severity offense scoring and "public safety factor" classific-

3

ation for his offense of conviction (Conspiracy to Distribute Mar-
ijuana). These included Inmate Request to Staff "cop-outs" in Oct-
ober and November. (Memo, Marvel, Att. 4 and 5).

(11)  Molzen provided FCI Oxford case manager, Ms. Pease, with a
detailed memorandum on his understanding of BOP classification
policy. Molzen attached specific pages of his sentencing tran-
scripts to this memorandum indicating the court's position on this
arrest conduct; ruling against the conduct presented in the PSIR
in favor of obstruction of justice, a non-violent offense design-
ation. (Memo., Auterson Declaration (Auterson), Att. 4).

(12)  The November 24, 2003 response of Case Management Coordinator
(CMC) Ms. Fredrick clarified the institution's position, stating
the reason for Molzen's increased classification was his alleged
actions detailed as arrest conduct which was "aggressive and intim-
idating, and likely to cause serious bodily injury." (Memo, Auter-
son, Att. 5).

(13)  In Ms. Pease's reply to Molzen's December 4, 2003 "cop-out,"
she provided guidance, in the form of an offer to attach a memo to
any paperwork supporting a change of this conduct misrepresented in
the PSIR, by presenting the challenge to the USPO in compliance with
"Sellers v BOP". Ms. Pease also include a page from the custody
classification manual, highlighting "Assign the points on the basis
of the more severe documented behavior," even though the paragraph
directly above it, providing in bold type, "In determining 'Severity
of Current Offense' staff shall review the Statement of Reasons, if
provided (attachment to the Judgment) and ensure the information
provided is appropriately used in classifying the inmate." (emphasis

4

original)(Add., Exhibit C).

(14)  Molzen sought additional input on this classification issue
from the Regional Office of the BOP.  The Corrections Programs Ad-
ministrator, in a December 29, 2003 letter, indicated that "the
warden ... has the authority to determine whether the documenta-
tion ... submitted is sufficient to warrant placement of a nota-
tion in [the] Pre-Sentence Investigation Report.  The Administrator
further advises should Molzen be unable to resolve the issue at the
institution level, appeal through the Administrative Remedy Pro-
gram would be available.  (Add., Exhibit D).

(15)  Molzen forwarded correspondence and copies of the letters to
FCI TEAM and USPO to his sentencing judge, the Honorable James M.
Rosenbaum, U.S. District Judge (presently Chief Judge) within the
District of Minnesota.  The Judge's responses to these submissions
directed Molzen to the Administrative Remedy Program and indicated
that the issue could not be addressed informally, by letters,
through the court.  (Add., Exhibit E and F).

(16)  Molzen attempted, again, to address the issue through the
USPO.  In a March 10, 2004 letter, Molzen provided the USPO with
Eighth Circuit case authority, providing the appending of the
PSIR with the ruling of the court should the facts presented in
the document be different that the finding of the court.  Molzen
pointed out how the information presented in the PSIR was being
used to make very important custody decisions while in the BOP.
Again, Molzen pointed out that the Judge made a finding of fact
different than provided by the PSIR and that the Judgment stated
specifically that the "court adopts the factual findings and guide-

5

line application in the presentence report, except as indicated at
the hearing." Molzen expected, but did not receive, a response
from the USPO to this comprehensive request. (Add., Exhibit G).
(17) Molzen began his administrative remedy with an informal
resolution form (BP-8) to Correctional Counselor, Mr. Buttner, on
or about April 3, 2004, stating Molzen's several attempts to seek
relief on the custody classification issue. (Add., Exhibit H)
(18) After several weeks of inaction as to the BP-8, Mr. Buttner
answered Molzen on May 19, 2004, mimicking the language provided
in the response Molzen received from the CMC in November of 2003.
(Add., Exhibit H and Memo. Auterson, Att. 5). Molzen proceeded to
the Administrative Remedy Request (BP-9). (Memo, Marvel, Att. 2).
(19) In this Request for Administrative Remedy (BP-9) to the Warden
at FCI Oxford, Molzen avers that his arrest conduct consisted only
of flight and that his actions were only to avoid contact and
confrontation with anyone on the night of his arrest. Molzen asserts
that the allegations presented in the PSIR are being used contrary
to the order of the court. Molzen requests that this information
be appended to the PSIR and be acknowledged for classification pur-
poses as allowed by Region Corrections Program Administrator (see
¶ 14 above). The Warden fails to address this issue in the response
on June 4, 2004. (Memo, Marvel, Att. 2).
(20) Molzen appeals the BP-9 to Region through a Regional Admin-
istrative Remedy Appeal (BP-10), dated June 8, 2004. Molzen appeals
the failure of the Warden to address the appending issue of the
transcripts to the PSIR and the finding of fact acknowledged. Again,
Molzen points out the differences between the PSIR and the Judgment

6

Molzen points out that there must be reasonable efforts to obtain documentation of <u>factual</u> offense conduct. Molzen request direction for appending the file to allow consideration in accordance to the court's factual finding. The Regional Director responded, without addressing the court's finding or appending the file, as the Warden had previously in the BP-9 response. (Memo, Marvel, Att. 2)

(21) Molzen appeals the BP-10 to the General Counsel of the Central Office of the BOP (Central Office) via a Central Office Administrative Remedy Appeal (BP-11), further appealing the Warden's failure to address the appending of the file issue, as well as Region's failure to address the issue on appeal. The Central Office relied upon the provision in PS 5100.07, stating: "the severity of the current offense be reflective of 'the most severe documented instant offense <u>behavior</u>.'" (emphasis original). General Counsel concluded that "irrespective of the contents of the sentencing transcript, this is documented offense behavior and it is construed as equivalent to an assult of the greatest severity. This determination is reasonable, consistant with policy, and fully supportable." Molzen disagrees with this assessment and prepares to file a motion to expand the record at sentencing and to append the PSIR with the sentencing court's determination. (Memo, Marvel, Att. 2)

(22) On September 30, 2004, Molzen filed a motion, pursuant to Rule 32, Federal Rules of Criminal Procedure, to expand the record of the sentencing hearing as to the court's finding against the arrest conduct alleged in the PSIR and favoring obstruction of justice, as well as appending the record of this expanded finding to the document in possession of the BOP. (D. Minn. 00-CR-25)

7

(23)  This verified motion contained Molzen's first hand version
of his arrest conduct as he experienced it and one similar to the
affidavit supporting evidence to the court prior to sentencing, as
allowed by criminal rule.  The court relied upon this evidence to
make the factual finding that Molzen's conduct did not amount to
reckless endangerment or constitute a violent action, as he in no
way initiated any of the contact with law enforcement, that law
enforcement did not identify themselves as they rushed into arrest
Molzen, with guns drawn.  Not knowing these several armed men
were law enforcement officers, Molzen fled the area in his vehicle
in fear for his life and safety.  Two unmarked vehicles struck
Molzen intentionally, trying to stop him.  Molzen continued to
flee believing these vehicles were working with those trying to
harm him.  It was only when Molzen was hit broadside by a marked
squad car, with emergency lights activated, that Molzen became
aware that he was involved in a police action.  The obstruction
of justice enhancement was ordered, Molzen believes, due to the
continued flight after law enforcement was identified. No other
physical contact was made until Molzen was out of the truck and
taken into custody. (Verified Motion for Expansion of the Record,
pp. 4-5, Criminal Case No. 00-CR-25 (D.Minn. 2000), (Add. Exhibit


(24)  The court ordered the U.S. Attorney's Office to answer this
Verified Motion for Expansion of the Record.  The Assistant U.S.
Attorney who prosecuted the case originally answered on November
2, 2004.  The AUSA did not refute Molzen's verified statements
of his arrest conduct as he personally experienced it. Id.

8

(25)  The court review of the pleading found "both the Judgment
and Commitment Order [sic] and the sentence, as imposed, are con-
dign."  The Judge denied the request to expand the record for ap-
pending the PSIR. On November 18, 2004, Molzen moved the court for
reconsideration.  The court denied this motion, but Molzen did not
rececieve notification of this order until April of 2005.  Appeal
was taken in the Eighth Circuit Court of Appeals but was summarily
dismissed as untimely filed (Add., Exhibit

(26)  Molzen found the court ruling as one promoting that the Judg-
ment was entirely in accordance with wat was deserved or merited
and that the Statement of Reasons was the will of the court. As the
arrest conduct enhancement issues was the only issue found to be
inconsistant with that provided by the PSIR, the non-violent find-
ing of obstruction of justice was the will of the court, over the
violent reckless endangerment promoted by the PSIR.  The statements
and allegations within the PSIR are not considered facts or evidence
until found true by the sentencing court.  The court did not "adopt"
the findings in the PSIR as to this arrest conduct. (Add., Exhibit B)

(27)  Molzen considered, since the BOP had been presented with a
copy of the transcripts and was already in possession of the Judg-
ment, the controlling document in Molzen's incarceration, any fail-
ure to consider this evidence presented towards the proper classif-
ication would be based solely upon the improper maintenance of
Molzen's records and files.

(28)  Molzen is presently incarcerated at the FCI in Terre Haute,
Indiana after being tranferred from FCI Oxford, mid-semester,
while he was taking three college courses at the institution, as

part of his ongoing educational programming. Molzen was tranferred
after he requested guidance from the CMC as to educational programs
offered outside the institution. When Molzen arrived at FCI Terre
Haute, he found no educational programming being offered whatsoever.

(29)  Molzen addressed the CMC at FCI Terre Haute as to the maint-
enance of his BOP file to reflect accurate, complete, relevant, and
timely records, as provided by the Privacy Act, and requested a
classification hearing on the basis of the sentencing hearing tran-
scripts. (Plaintiff Addendum, Exhibit J).

(30)  Molzen provided the General Counsel of the Central Office with
notice of cause under the Privacy Act on April 27, 2005 (Plainiff
Addendum, Exhibit K).

(31)  This notice must have been forwarded to Region as Molzen re-
ceived acknowledgement of his "Freedom of Information Act (FOIA)
request" in a May 4, 2005 letter.  Region further requests extend-
ing the time to respond due to the "current backlog of requests."
(Plaintiff Addendum, Exhibit L).

(32)  On May 25, 2005, Region Counsel, Daryl Koslak, identifies
Molzen's request as one under the Privacy Act and that Molzen "may
utilize the Administrative Remedy Program established at your
institution to seek resolution of this problem." Mr. Koslak also
provides for an administrative appeal of his position on this issue
through the Assistant Attorney General. (Plaintiff Addendum, Ex-
hibit M).

(33)  Molzen appeals to the Assistant Attorney General on May 27,
2005 FOIA request number 05-05038. Molzen initiates, through a
BP-8, a request for informal resolution of this Privacy Act issue

10

at FCI Terre Haute with Correctional Counselor Mr. D. White on the
same day. (Plaintiff Addendum, Exhibit N).

(34)  Mr. White returns the BP-8 to Molzen on June 3, 2005, in-
dicating that he is "unable to resolve at this level" the issue
presented.  Molzen initiates the BP-9 on June 6, 2005, again pre-
senting the issue as a Privacy Act claim. (Memo, Marvel, Attatch-
ment 2).

(35)  Molzen received notification on June 17, 2005, that his
Privacy Act appeal (request no. 05-05038) was received by the
Office of Information and Privacy for the U.S. Department of Justice.
Due to continued backlog, the Office had "adopted a general prac-
tice of assigning appeals in the approximate order of receipt."
Molzen was assigned an appeal number (05-1993) and has yet to
receive any notice or correspondence since that date. (Add. Exhibit
O).

(36)  Molzen received a response to the previously filed BP-9 on
June 27, 2005, indicating the practice that "Unit staff should not
change the report, but should inform the Probation Officer the re-
port has been challenged.  If the Probation Officer confirms the
information in the report is inaccurate, staff should insert a note
to that effect in the file in order to ensure no decisions affect-
ing the inmate are based upon the discredited information."  As
this "Sellers" request was sent, again, but this time by FCI Terre
Haute staff, Molzen's Administrative Remedy was deemed addressed.
Molzen appealed this decision to Region via a BP-10 on July 2,
2005. (Memo, Marvel, Att. 2)

(37)  In this BP-10 to Region, Molzen appealed the efforts deemed

11

"reasonable to ensure the accuracy of the information in the file" through the "Sellers" letter, as no reply was given any of the other correspondence sent to the USPO. Molzen also points to BOP policy which states the BOP "do[es] not allow for changes or addendums to be made ... after sentencing since it is a court document." Molzen again points out that the Statement of Reasons in the Judgment of the sentencing court states "the court adopts the factual finding ... in the presentence report, except as indicated at the hearing." (Memo, Marvel, Att. 2).

(38) Molzen expected a response to the above BP-10 by the 30 day time limit provided by regulation. When the time was exceeded, Molzen requested status of the BP-10 through Case Manager, Ms. B. Auterson. Ms. Auterson supplied a receipt indicating an August 6, 2005 due date on August 17. Molzen received the response to the BP-10 on the same date. (Memo, Marvel, Att. 2; Add. Exhibit P).

(39) The BP-10 response acknowledges that the "PSIR falls within the jurisdiction of the United States District Court, ... concerns regarding any information contained in this document must be addressed with the court." This document was signed by J.M. Junk, acting for Michael Nalley, Regional Director. J.M. Junk is the same individual indicated as author the the December 29, 2003 correspondence (see paragraph 5 above) which provides a substantially different position. The response concludes that since Unit Team had sent a request to the USPO for input, "this response is for information purposes only." Molzen appealed this BP-10 to the Central Office via a BP-11 on August 17, 2005 (Memo, Marvel, Att. 2).

(40)  The appeal to Central Office provides that since the PSIR

cannot be corrected "as it is a court document" Molzen finds that

the document was already "corrected" by the sentencing court, as

allowed by Rule 32, Federal Rules of Criminal Procedure, and the

file warrants immediate correction to indicate the court's ruling.

Molzen specifically stated that failure to do so would allow for

sanctions under the Privacy Act. (Memo., Marvel, Att. 2).

(41)  Molzen receives a receipt for the BP-11 indicating a re-

sponse due October 9, 2005. On October 23, 2005, Molzen writes

the Office of the General Counsel at the Central Office seeking

status of this response. (Add. Exhibit Q).

(42)  On November 13, 2005, Molzen files a Privacy Act complaint,

by depositing it in the institutions legal mail system, in the

United States District Court for the District of Columbia without

the benefit of the Central Office response, as the time alloted

for a reply, including a period allowing for extention, had elapsed.

(43)  On November 16, 2005, Molzen received the response to the

BP-11, which was dated November 9, 2005.  The General Counsel

denied relief as institution staff had complied with policy.  The

response provided a statement of policy, allowing that "an inmate

may challenge the accuracy of information in his central file and

is required to provide staff with sufficient information in support

of a challenge."  This response provides as staff sought input from

the USPO, they have no further obligation to Molzen until such a

response from the USPO is received. (Memo., Marvel, Att. 2).

(44)  On March 3, 2006, Molzen receives correspondence from the

USPO, Lisa A. Connolly, responding to "correspondence received in

this office regarding [Molzen's] presentence investigation report."
(Memo., Auterson, Att. 2; Add., Exhibit U).  This response confirms
that the sentencing court "chose to apply an enhancement for ob-
struction of justice and did not apply an enhancement for reckless
endangerment," but also states the "court did not indicate that the
information contained regarding the conduct in the presentence in-
vestigation report which led to the enhancement was not factual,"
that the court "simply chose, as indicated in the transcript, to
apply the Guidelines to [Molzen's] benefit." Id.  Though this letter
does not indicate a "cc" indicating copies going anywhere but to
Molzen, the institution, through case manager Auterson, received
a fax of this letter. Id.

## ATTESTATION

I, Michael Jay Molzen, declare the foregoing Affidavit of
Michael Jay Molzen, in the form of enumerated verified statements
of fact, supported by true and correct copies of specified docu-
ments, are true and correct to the best of my knowledge and
belief, under the pains and penalty of perjury, as allowed by
Title 28 U.S.C. § 1746.  Signed this _25th_ day of June, 2006.


_____
Michael Jay Molzen, affiant


14