## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL JAY MOLZEN,

                    Plaintiff,

    v.

FEDERAL BUREAU OF PRISONS,

                    Defendant.

Civil Action No. 05-2360 (HHK)

### MEMORANDUM  OPINION

Plaintiff Michael Jay Molzen, an inmate incarcerated at the Federal Correctional

Complex operated by the Federal Bureau of Prisons ("BOP") brings this action against BOP

under the Privacy Act, 5 U.S.C. § 552a.  Molzen asserts that BOP willfully and intentionally

fails to maintain its records pertaining to him with the required level of accuracy, and that its

reliance on these records has resulted in adverse determinations with respect to his offense

classification, custody level, designation and access to educational programs.  He seeks to have

these records amended[1] and sues for monetary damages as well.  Before the Court is BOP's

motion to dismiss or, in the alternative, for summary judgment.  Having considered the motion,

Molzen's opposition,[2] and the entire record of this case, the court concludes that BOP is entitled

to summary judgment.

---

[1]      Molzen does not identify which specific documents or records contain erroneous information.  The court presumes that his references to "records" are references to his presentence investigation report ("PSR") and custody classification form.

[2]      The court construes Molzen's Motion to Deny Defendant's Motion to Dismiss Complaint and accompanying papers collectively as his opposition to BOP's dispositive motion.  His opposition includes a Memorandum in Support of Plaintiff's Motion to Deny Defendant's Motion to Dismiss Complaint ("Pl.'s Opp'n"), an affidavit ("Pl.'s Aff."), and an Addendum of exhibits ("Addendum").

## I.  BACKGROUND

A criminal prosecution brought against Molzen in the United States District Court for the

District of Minnesota was resolved by his plea of guilty to one count of conspiracy to distribute

and possess with intent to distribute in excess of 1,000 kilograms of marijuana.  Memorandum in

Support of Plaintiff's Motion to Deny Defendant's Motion to Dismiss Complaint ("Pl.'s

Opp'n"), Addendum, Ex. B (Judgment, Case No. 00-CR-25(02) (JMR)) at 1.  On November 30,

2000, the court sentenced him to a 100-month term of imprisonment followed by a 4-year term

of supervised release, and ordered restitution totaling $10,000.  *Id.* at 2, 4.  The sentencing court

recommended that Molzen serve his prison term at a facility in Minnesota and that he be allowed

to participate in a drug treatment program.  *Id.* at 2.  In addition, the sentencing court adopted

"the factual findings and guideline application in the presentence report, except as indicated at

the hearing."  *Id.* at 5 (Statement of Reasons).

According to the presentence investigation report ("PSR"), Molzen "assisted in the

distribution of approximately 1,900 pounds of marijuana and is viewed as an average participant

with respect to his codefendants."  Addendum, Ex. A (excerpt from PSR).  Paragraph 30 of the

PSR stated:

> [Molzen] recklessly created a substantial risk of death or serious
> bodily injury to another person in the course of fleeing from law
> enforcement officers.  At the time of arrest, [Molzen] attempted to
> flee in his vehicle at a high rate of speed.  During the flight,
> [Molzen] crashed into 3 separate law enforcement vehicles,
> requiring 2 officers to seek medical attention.  As such a 2-level
> enhancement is applied for reckless endangerment during flight.
> §3C1.2.

*Id.*

Molzen alleges that the sentencing court "overruled the finding of the [PSR] that

plaintiff's arrest conduct rose to a level of 'reckless endangerment,' instead finding the conduct

2

provided an enhancement for obstruction of justice." Complaint ("Compl.") at 2. According to Molzen, based on the offense behavior set forth in the PSR, BOP improperly assigns him "a greatest severity offense classification and increased custody" that "keep[s] [him] well beyond reasonable visiting distance from his family and away from educational opportunities," contrary to the sentencing court's recommendation and BOP policy. *Id.* at 3. Instead, Molzen claims that his arrest behavior constituted obstruction of justice, and that BOP should score the behavior "as a moderate nonviolent offense allowing for low custody incarceration, as recommend by the U.S. District Judge at sentencing." *Id*. at 5.

## II.  DISCUSSION

*A.  Summary Judgment Standard*

Because the court has considered matters outside of the pleadings, the instant motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(b). Under Fed. R. Civ. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813

F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly

probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249-50.

B. *Statute of Limitations*

BOP argues first that Molzen failed to file this action suit timely. Generally, a plaintiff

must bring a civil action "within two years from the date on which the cause of action arises."

5 U.S.C. § 552a(g)(5). For purposes of Privacy Act claims, a cause of action arises "at the time

that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the

error; and (3) the plaintiff either knew or had reason to know of the error." *Szymanski v. United*

*States Parole Comm'n*, 870 F.Supp. 377, 378 (D.D.C. 1994); *see Tijerina v. Walters*, 821 F.2d

789, 798 (D.C. Cir. 1987) (cause of action arises when plaintiff "knows or should know of the

alleged violation"). Unless this statute of limitations is equitably tolled, the late filing of a

Privacy Act suit deprives the Court of subject matter jurisdiction. *See Chung v. United States*

*Dep't of Justice*, 333 F.3d 273, 276-78 (D.C. Cir. 2003); *Bernard v. United States Dep't of*

*Defense*, 362 F.Supp.2d 272, 278 (D.D.C. 2005).

According to BOP, Molzen's cause of action arose by October 2003 as evidenced by his

challenge to the custody classification scoring based on his PSR with his Unit Team while

incarcerated at the Federal Correctional Institution in Oxford, Wisconsin. Def.'s Mot. at 6 &

Auterson Decl., Attach. 4 (October 22, 2003 Memorandum to Case Manager regarding

recalculation of custody points). At that time, he sought a meeting with his Case Manager "to

discuss the recalculation of [his] custody points."[3] *Id.* Evidently this meeting took place on

---

[3]      In the end, staff maintained that the points assigned, based on the more severe documented offense
behavior, warranted a score commensurate with reckless endangerment. Auterson Decl., Attach. 4 (undated Cop-
Out Response). Subsequently, Molzen sought both correction of the PSR itself and correction of his custody score.
For example, in December 2003, Molzen submitted a request to BOP staff regarding "unresolved issues of the
greatest severity classification based on conduct as stated in the [PSR]." Addendum, Ex. C (Inmate Request to
Staff). Evidently Molzen began another round of inmate grievances in April 2004 challenging "the present
                                                                                              (continued...)

4

October 23, 2003.  *See id.* (October 23, 2003 Inmate Request to Staff).  Molzen knew of the

errors in his records and BOP's reliance on them, and already had been harmed by the error.

Consequently, BOP argues, the filing of Molzen's complaint on December 8, 2005 fell more

than two months beyond the two-year statute of limitations and must be dismissed.  *Id.* at 7.

Molzen counters that his cause of action arose when he exhausted his administrative

remedies as to all claims.  Pl.'s Opp'n at 9.  He asserts that his Privacy Act issues "were being

presented administratively for nearly two years prior to being filed in this Court."  *Id.* at 10; *see*

Def.'s Mot., Marvel Decl., Attach. 2 (inmate grievances and responses regarding custody

classification score), Attach. 3 (inmate grievances and responses regarding accuracy of

information in PSR).  Because he did not receive BOP's November 9, 2005 final response to his

inmate grievance until November 16, 2005, *see* Pl.'s Aff. ¶ 43, he asserts that the filing of this

action was timely.  Pl.'s Opp'n at 10.

The court concludes that Molzen knew or had reason to know of an allegedly erroneous

custody classification by October 23, 2003.  *See Mitchell v. Bureau of Prisons*, No. 05-0443

(RWR), 2005 WL 3275803, *3 (D.D.C. Sept. 30, 2005) (plaintiff aware of error in BOP file on

---

(...continued)

classification scoring of greatest severity."  *Id.*, Ex. H (Informal Resolution Form).  The Case Manager responded as follows:

> Your [PSR] was reviewed and it has been decided that your score of seven for the current offense category on the custody classification form is accurate.  Although you were convicted of a drug charge, your actions as recorded in the offense conduct portion of the [PSR] were described as aggressive and intimidating.  Based on the seriousness of your actions, the current score is correct.

*Id.*  In April 2005, Molzen filed another Inmate Request to Staff claiming that his BOP "contains erroneous information ([PSR] detailing 'reckless endangerment')."  *Id.*, Ex. J (April 18, 2005 Inmate Request to Staff).

In December 2003 and March 2004, Molzen sent letters to the United States Probation Office requesting correction of the PSR.  *Id.*, Ex. E, G (December 19, 2003 and March 10, 2004 letters to L. Connolly, U.S. Probation Office).  In addition, he contacted the sentencing judge by letter and by filing a motion pursuant to Rule 32 of the Federal Rules of Criminal Procedure.  *Id.*, Ex. F (January 12, 2004 letter to The Hon. James Rosenbaum), Ex. I ("Verified Motion for Expansion of the Record").

date he raised issue with prison staff). Further, the Court deems this action as having been filed on November 17, 2005, the date on which the Clerk of Court stamped the complaint "received."[4] Although a party must exhaust his administrative remedies before filing a suit under the Privacy Act's amendment provision, *see* 5 U.S.C. § 552a(d), (g)(1)(A), there is no such requirement for a damages claim under 5 U.S.C. § 552a(g)(1)(C). *M.K. v. Tenet*, 99 F.Supp.2d 12, 20 (D.D.C. 2000); *but see Reid v. Fed. Bureau of Prisons*, No. 04-1854 (ESH), 2005 WL 1699425, *3 (D.D.C. July 20, 2005)) (holding that Prison Litigation Reform Act's exhaustion requirement applies to Privacy Act claim. The statute of limitations was not tolled while Molzen's inmate grievances were pending, and his failure to this civil action within two years of the date on which his accuracy claim arose bars the claim.

## C. Exemption from the Privacy Act's Amendment and Accuracy Provisions

Even if Molzen had filed this action timely, BOP persuasively argues that, by regulation, BOP's Inmate Central Records System is exempt from the Privacy Act's amendment and accuracy provisions. Consequently, Molzen's attempt to secure an amendment of allegedly erroneous records and claim for monetary damages flowing from BOP's alleged failure to maintain records with the requisite level of accuracy fail.

Generally, the Privacy Act requires that each covered agency:

> maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination

---

[4] It is the practice of the Clerk of Court to stamp the first page of each *pro se* complaint and application to proceed *in forma pauperis* on the date of their receipt. Review of the Court's docket reveals that the Clerk of Court received Molzen's complaint and application to proceed *in forma pauperis* on November 17, 2005. *See* Dkt. # 1-2. Further review shows that the Court approved Molzen's *in forma pauperis* application on November 29, 2005, and that these papers officially were placed on the court's electronic docket on December 8, 2005.

5 U.S.C. § 552a(e)(5). An individual may access an agency's records pertaining to him, and

may request amendment of those records. *See* 5 U.S.C. § 552a(d). He may file a civil action

against the agency if it refuses to amend its records upon request, 5 U.S.C. § 552a(g)(1)(A), or if

the agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C); *see Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992)

(subsection (g) provides civil remedies for violations of subsection (e)(5)).[5] In a civil suit filed

pursuant to 5 U.S.C. § 552a(g)(1)(C), if the agency's actions were willful or intentional, the

court may award actual damages sustained by the individual as a result of the agency's failure. 5

U.S.C. § 552a(g)(4)(A).

Notwithstanding the relief ostensibly provided by the Privacy Act, the Director of an

agency may promulgate regulations to exempt any of the agency's systems of records from

certain parts of the Privacy Act, if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

---

[5]     The variation in language between subsection (e)(5) and subsection (g)(1)(C) of the Privacy Act is "of no substantive significance." *Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C. Cir. 1987) (en banc).

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, promulgated regulations exempt BOP's Inmate

Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act.

*See* 28 C.F.R. § 16.97(a), (b)(3), (j).  An inmate's PSR and information pertaining to his security

level and custody classification are maintained in the Inmate Central Records System.  *See*

Def.'s Mot. at 8; Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole

Mini-Files (Sept. 8, 1997) ("P.S. 5800.11") at 7-8.  Accordingly, the relief Molzen requests,

amendment of his custody classification form, cannot be awarded under the Privacy Act.  *See*

*Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam) (affirming dismissal of claim

for amendment of allegedly false medical records maintained in BOP files because regulations

exempted records from Privacy Act's amendment provision).  Nor does the Privacy Act allow

amendment of the PSR itself.  *See White v. United States Probation Office*, 148 F.3d 1124, 1125

(D.C. Cir. 1988) (per curiam) (barring claim for amendment of PSR because regulations exempt

PSR from Privacy Act's amendment provision); *Sellers*, 959 F.2d at 309 (upholding dismissal of

claim under § 552a(d) for amendment of PSR maintained in BOP inmate files).

In addition, promulgated regulations exempt the Inmate Central Records System from

subsection (e)(5), the accuracy provision of the Privacy Act.  *See* 28 C.F.R. § 16.97(a), (j),

(k)(2).  This exemption effectively deprives Molzen of any remedy, including monetary

damages, for BOP's alleged failure to maintain its records with the requisite level of accuracy.

*See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (affirming

dismissal of Privacy Act claims against BOP because Inmate Central Records System is exempt

from the accuracy provisions of the Privacy Act); *Scaff-Martinez v. Fed. Bureau of Prisons*, No.

05-11119, 2005 WL 3556035, *2 (11th Cir.  Dec. 29, 2005) (per curiam) (upholding dismissal of

Privacy Act claims, including claim for monetary damages, because inmate records are exempt

from subsections (d), (e)(5), and (g)); *McClellan v. Bureau of Prisons*, No. 5:05cv194, 2006 WL

2711631, *5 (S.D. Miss. Aug. 2, 2006) (Magistrate Report and Recommendation)

(recommending dismissal with prejudice because exemption from § 552a(e)(5) "proscribes

plaintiff's suit against the BOP for either injunctive or monetary relief"); *Fisher v. Bureau of

Prisons*, No. 05-0851 (RMU), 2006 WL 401819, *2 (D.D.C. Feb. 21, 2006) (dismissing

damages claim based on BOP's alleged failure to maintain accurate records in Inmate Central

Records System); *see also Parks v. Bureau of Prisons*, No. 7:06-CV-00131, 2006 WL 771718,

*1 (W.D. Va. Mar. 23, 2006) (dismissing suit under 28 U.S.C. § 1915A for failure to state a

claim because BOP central records exempt from Privacy Act's accuracy provision). If

information in the Inmate Central Records System need not be maintained with the level of

accuracy set forth in subsection (e)(5), the Court cannot grant relief for BOP's alleged record

keeping failures.

Molzen correctly notes that BOP can waive its exemption from subsection (e)(5)'s

accuracy provision. *See* Pl.'s Opp'n at 16. "Where compliance . . . would not appear to interfere

with or adversely affect the law enforcement process, and/or where it may be appropriate to

permit individuals to contest the accuracy of the information collected. . ., the applicable

exemption may be waived, either partially or totally, by [BOP]." 28 C.F.R. § 16.97(k). BOP

does not indicate any intention to make such a waiver, however, and Molzen presents no

argument that this provision should apply in this case. Further, a PSR "fall[s] into the category

of which a waiver under subsection (k) was not intended." *Thurston v. United States Bureau of

Prisons*, No. 03-2629 (RWR), 2006 WL 1193648, *1 (D.D.C. May 1, 2006).

*D. Willful or Intentional Violation of the Privacy Act*

Even if damages were available to Molzen under subsections (e)(5) and (g) of the Privacy Act, he does not show any willful or intentional violation of the Act to justify such an award.

In order to recover damages, "a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and, consequently, that an 'adverse' 'determination [was] made' respecting the plaintiff."[6] *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552a(g)(1)(C)). And, it the plaintiff who has the burden of proving that the agency's actions in violating the Privacy Act were intentional or willful. *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984); 5 U.S.C. § 552a(g)(4). To meet his burden, a plaintiff "must prove that the offending agency acted 'without grounds for believing [its actions] lawful' or that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Laningham*, 813 F.2d at 1242 (quoting *Albright*, 732 F.2d at 189). Negligence and inadvertence do not rise to the level of intentional or willful violations of the Privacy Act. *See Albright*, 732 F.2d at 189.

1. Molzen Does Not Establish that Information in the PSR is Inaccurate

According to the PSR, in the course of fleeing from law enforcement officers, Molzen drove his vehicle at a high rate of speed and crashed into three law enforcement vehicles, requiring two officers to seek medical attention. Addendum, Ex. A. Notwithstanding the conclusions of the PSR's author, the sentencing court "did not put in a reckless endangerment enhancement." *See* Def.'s Mot., Auterson Decl., Attach. 4 (excerpt of sentencing hearing

---

[6]    An adverse determination in the prison context is one that "negatively 'affect[s an] inmate's rights.'" *Toolasprashad*, 286 F.3d at 584 (quoting *Deters v. United States Parole Comm'n*, 85 F.3d 655, 659 (D.C. Cir. 1996)). The Court presumes, without deciding, that BOP made adverse determinations in reliance on erroneous information maintained in its records, including the PSR.

transcript), 27:11-12.  Rather, the court "added a two-point enhancement for obstruction as opposed to reckless endangerment."  *Id.*, 29:19-20.

Molzen argues that the sentencing court made "an explicit finding, a ruling, that there was a finding of fact that the Court found inconsistent with those presented in the [PSR]."  Pl.'s Opp'n at 6.  That court "found this arrest conduct . . . was not to be considered Reckless Endangerment, but that of Obstruction of Justice."  *Id.*  For this reason, Molzen argues that obstruction of justice is "non-violent, outside the classification of greatest severity offense and public safety factor and squarely moderate level classification."  *Id.*; Addendum, Ex. S (excerpts of Program Statement 5100.07, Security Designation and Custody Classification Manual (9/3/99).[7]

Molzen's assertions are entirely *ipsit dixit*.  His submissions do not establish that the sentencing court made a factual finding with respect to his offense conduct, and there is no record evidence of an amendment or addendum to the PSR.  At most, it appears that the sentencing court deemed Molzen's conduct not sufficiently serious to warrant a two-year enhancement for reckless endangerment, thus "discounting" the conduct for purposes of imposing the sentencing enhancement under the United States Sentencing Guidelines.

2.  BOP Took Reasonable Steps to Ensure the Accuracy of the PSR

When an inmate challenges the accuracy of information in his Inmate Central File, his Unit Team "shall take reasonable steps to ensure the accuracy of the challenged information, particularly when that information is capable of being verified."  P.S. 5800.11 at 19; *see* Auterson Decl. ¶ 5.  When an inmate challenges information in his PSR, BOP staff "should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and

---

[7]    P.S. 5100.07 has been rescinded.  The Program Statement currently in effect is P.S. 5100.08, Inmate Security Designation and Custody Classification (9/12/2006).

11

request that a written response also be provided." P.S. 5800.11 at 19.

Following up on Molzen's challenge to the accuracy of his PSR, both his former and current Unit Managers contacted the United States Probation Officer for the District of Minnesota. Auterson Decl. ¶¶ 4, 7. The former Unit Manger, Steve Robinson, sent a letter to the Probation Office to which he attached all the documents Molzen submitted in support of his claim that the PSR contains incorrect information. *Id.* ¶ 7 & Attach. 3 (January 2, 2004 letter to K.D. Lowry, Chief USPO). Although BOP does not provide a copy of a response to Mr. Robinson's letter, it submitted a copy of the United States Probation Office's response to Molzen's inquiry. *Id.* ¶ 6 & Attach. 2 (March 1, 2006 letter from L.A. Connolly, U.S. Probation Officer, District of Minnesota). In relevant part, this response stated:

> As you know, the [PSR] included an enhancement for reckless endangerment during flight. During the sentencing hearing, the Court chose to apply an enhancement for obstruction of justice and did not apply an enhancement for reckless endangerment. However, the Court did not indicate that the information contained regarding the conduct in the [PSR] which led to the enhancement was not factual. The Court simply chose, as indicated in the transcript, to apply the [United States Sentencing] Guidelines to [plaintiff's] benefit. The Court did not order the [PSR] to be amended for false information. The Court chose to use the facts contained in the Offense Conduct section of the [PSR] to apply an enhancement for Obstruction of Justice and not the enhancement for Reckless Endangerment During Flight.

*Id.* (emphasis added).

Molzen cannot show that BOP either acted without grounds for believing its actions lawful, or disregarded his rights under the Privacy Act. The record demonstrates that BOP staff acted on Molzen's challenge to the accuracy of the PSR by contacting its author, an approach consistent with BOP's policy. BOP's refusal to amend the PSR is not a willful or intentional violation of the Privacy Act.

*E.  Attack on BOP's Decisions*

In addition to challenging the accuracy of information contained in the PSR, Molzen appears to mount a direct challenge to the decisions BOP has made with respect to his custody classification and security level based on information contained in the PSR.  The Privacy Act cannot be used to force an agency to reverse or amend its decisions.  Rather, the Act "is intended to remedy 'factual or historical errors,' and is not a vehicle for addressing 'the judgments of federal officials . . . reflected in records maintained by federal agencies.'"  *Velikonja v. Mueller*, 362 F.Supp.2d 1, 16 (D.D.C. 2004) (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)), *aff'd*, 466 F.3d 122 (D.C. Cir. 2006) (per curiam); *see Levant v. Roche*, 384 F.Supp.2d 262, 270-71 (D.D.C. 2005) (noting that plaintiff's "true complaint is not about the accuracy of his records, but about the underlying decision they reflect").  In short, plaintiff cannot force BOP to change his custody classification, public safety factor, and security level by means of this Privacy Act suit.

## III.  CONCLUSION

For these reasons, summary judgment is granted to BOP.  An Order consistent with this Memorandum Opinion will be issued separately on this same date.

HENRY H. KENNEDY, JR.
United States District Judge

Date: March 8, 2007

13